F I L E D

AUG 2 2 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE: GORDON PROPERTIES, LLC,           )
                                         )
            Debtor.                      )
                                         )
_____  )
                                         )     1:12cv1155 (LMB/IDD)
FIRST OWNERS' ASSOCIATION OF             )
    FORTY SIX HUNDRED                    )
    CONDOMINIUM, INC.,                   )
                                         )
            Appellant,                   )
        v.                               )
                                         )
GORDON PROPERTIES, LLC,                  )
                                         )
            Appellee.                    )

## MEMORANDUM OPINION

Before the Court is an appeal from a bankruptcy court decision disallowing appellant's proof of claim. For the reasons that follow, the decision will be reversed and the matter remanded in light of this Memorandum Opinion.

## I.   BACKGROUND

The instant appeal of an extremely contentious bankruptcy proceeding concerns a mixed-use condominium located at 4600 Duke Street in Alexandria, Virginia, known as the Forty Six Hundred Condominium (the "Condominium"). The dominant Condominium structure is a high-rise building that contains 396 residential units and 54 commercial units. The remainder of the Condominium consists of two adjacent street-front commercial units, one occupied by a gas station and the other by a restaurant. These

three distinct physical structures were administratively merged
in 1975 by the filing of official documents creating the
Condominium in its present form.

The parties to this matter are hardly strangers to the
Court.  Appellant First Owners' Association of Forty Six
Hundred, Inc. ("FOA" or "the Association") is a Virginia non-
stock corporation formed to oversee the management of the
Condominium pursuant to the Virginia Condominium Act.  See Va.
Code Ann. § 55-79.39, et seq.  Each person, group of persons,
corporation, or other legal entity that owns a unit at the
Condominium is a member of the Association, which, in turn, is
governed by a seven-person Board of Directors (the "Board"),
each of whom is elected by FOA members at annual meetings for
two-year terms.  The members' relative voting shares are a
function of ownership: the 396 residential units each control
0.188% of the vote, the 54 commercial units each control 0.191%
of the vote, the street-front restaurant unit controls 11.32% of
the vote, and the street-front gas station unit controls the
remaining 3.47% of the vote.  Appellee Gordon Properties, LLC
("Gordon Properties") is a Virginia limited liability company
that at last count owns 38 of the commercial units, including
the street-front restaurant unit.  As a result of this
ownership, Gordon Properties is entitled to approximately 19% of

2

the total votes.  The Condominium's Declaration and Bylaws
require every FOA member to pay an annual assessment,
representing the member's proportionate share of FOA's common
expenses.

FOA and Gordon Properties have been at war since 2006,
when FOA terminated Condominium Services, Inc. ("CSI"), a wholly
owned subsidiary of Gordon Properties, which had been FOA's
management agent for years.  Gordon Properties responded by
suing FOA in Alexandria Circuit Court over the decision to
terminate CSI.  The state court granted summary judgment in
favor of FOA, ruling that the Bylaws and the contract between
the parties authorized the disputed termination.  FOA
subsequently determined that the street-front restaurant unit
had been under-assessed for its proportionate share of FOA's
common expenses during and immediately after the period in which
CSI had managed the Condominium, setting the stage for further
litigation, including the matter currently before this Court.

In 2008, Gordon Properties again sued FOA in Alexandria
State Court, this time seeking a declaratory judgment that
would, among other forms of relief, prohibit FOA from levying
any assessment for common expenses against the street-front
restaurant unit.  FOA counterclaimed for an accounting and for
breach of contract based on Gordon Properties' alleged failure

3

to pay "$96,000 in assessments which it diverted to CSI and never paid [FOA]." FOA also sought a declaration that the street-front restaurant unit had to pay a share of the Condominium's operation and management expenses proportionate to its number of votes. Neither party ultimately prevailed: Gordon Properties' eight claims were either stricken by the state court or rejected by the jury. The same jury found for Gordon Properties on FOA's counterclaim for breach of contract, and the court struck FOA's request for an accounting. On the issue of common expenses, however, FOA earned a partial victory. The state court ruled that FOA was authorized to assess the street-front restaurant unit for 11.32% of the "common expenses relating to the operation and management of [FOA]," leading FOA to issue a "corrective assessment" for the period from 2003 to 2009 in the amount of $315,673.36 inclusive of late charges and interest.[1] Gordon Properties appealed the state court's decision to the Supreme Court of Virginia, but its petition was denied. To date, Gordon Properties has refused to pay the disputed assessment against the street-front restaurant unit. That assessment formed the basis of FOA's proof of claim when Gordon Properties later entered bankruptcy.

---

[1] The assessment was made in May 2009, after the order was issued but before the litigation had concluded.

In 2009, FOA sued CSI (but not Gordon Properties) for
conversion and breach of the management agreement arising from
events in the pre-2006 period.  A jury trial ensued, and FOA
obtained a judgment against CSI for $91,125 in compensatory
damages, $275,000 in punitive damages, and $11,390 in interest,
which was affirmed by the Supreme Court of Virginia.  See
Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six
Hundred Condominium, Inc., 709 S.E.2d 163 (Va. 2011).  FOA has
not received any of that judgment as a consequence of CSI's
insolvency.

On October 2, 2009, Gordon Properties filed a Chapter 11
bankruptcy petition,[2] scheduling four creditors, including FOA.
On January 29, 2010, FOA filed a proof of claim in the amount of
$315,673.36 based on a corrective assessment taking into account
Gordon Properties' failure to pay a proportionate share of
common expenses as owner of the street-front restaurant unit for
the period from 2003 to 2009.  Gordon Properties objected to the

---

[2] On January 26, 2011, CSI filed a Chapter 11 petition.  It
scheduled one creditor, FOA, which filed a proof of claim in the
amount of $453,533.12, based on the state court judgment plus
interest.  The IRS also filed a proof of claim for $1,955.45.
FOA moved to consolidate CSI's petition with Gordon Properties'
existing petition.  The bankruptcy court denied the motion, In
re Gordon Props., LLC, No. 09-18086-RGM, 2012 WL 404944 (Bankr.
E.D. Va. Feb. 8, 2012), but was reversed on appeal by this
Court, In re Gordon Props., LLC, 478 B.R. 750 (E.D. Va. 2012).
Gordon Properties' subsequently appealed that reversal to the
Fourth Circuit, but it was dismissed as interlocutory.

proof of claim on several grounds, principally arguing that the retroactive assessments were invalid and that FOA improperly apportioned the assessments.  FOA responded by filing a motion for partial summary judgment on Gordon Properties' objection, arguing in principal part that the Alexandria Circuit Court had already decided these issues, thus precluding any attempt to revisit them before the bankruptcy court.  On February 27, 2012, the bankruptcy court began a multi-day evidentiary hearing on FOA's claim.

On August 23, 2012, the bankruptcy court issued a Memorandum Opinion disallowing FOA's claim.  See In re Gordon Props., LLC, No. 09-18086-RGM, 2012 WL 3644788 (Bankr. E.D. Va. Aug. 23, 2012).  The bankruptcy court began by "determin[ing] what the state court had decided and the extent that res judicata or collateral estoppel affect[ed] the [present] litigation."  Id. at *7.  After reviewing relevant orders and letter opinions issued in the 2008 litigation between Gordon Properties and FOA, the bankruptcy court determined that the state court had decided the issue of FOA's authority to assess the street-front restaurant unit for 11.32% of the Condominium's common expenses, "preclud[ing]" the bankruptcy court from revisiting that issue by virtue of collateral estoppel.  Id. at *9.  At the same time, however, the bankruptcy court determined

6

that the state court "did not directly address the allocation of common expenses" — that is, the state court failed to address "the methodology" by which such an allocation was to be made among all of the Condominium's units.[3]  Id.  The bankruptcy court then chose to apply a methodology "enunciated" by the state court for the allocation of reserves to determine the appropriate allocation of common expenses.  Following this approach, championed by Gordon Properties and its expert, the bankruptcy court parsed each line item of operation and management expenses from the annual budgets to see which unit or units benefited directly.  See id. at *12.

This task was the primary subject of the four-day evidentiary hearing.  The bankruptcy court found credible the testimony of Gordon Properties' expert that only 20% of each line item constituted a common expense assessable against all Condominium units, whereas the remaining 80% constituted limited common expenses for which the street-front restaurant unit should not bear responsibility because it did not share in the benefit.  See id. at *16-*18.  Likewise, the bankruptcy court found that FOA's expert had not sufficiently distinguished

---

[3] The bankruptcy court was somewhat vague on this point.  It appears that the court really meant to say that the state court failed to decide which of the Condominium's expenses were truly common — rather than appertaining to specific units less than the whole — and therefore assessable against the street-front restaurant unit at the 11.32% rate.

between common expenses and limited common expenses in explaining how FOA arrived at the amount of the corrective assessment. See id. at *15-*17, *19. Having determined that Gordon Properties carried its burden of overcoming the prima facie validity of FOA's proof of claim, the bankruptcy court considered whether FOA had proven its claim by a preponderance of the evidence. The bankruptcy court found that the evidence adduced at the hearing and in the record was inconclusive as to "how much [Gordon Properties] owes [FOA] for properly assessed condominium fees for 2003 through 2009," and that it "[did] not have sufficient information to review each line item and prorate it among the applicable categories" of common elements and limited common elements. Id. at *19. Unable to determine whether Gordon Properties was assessed too much or too little, the bankruptcy court disallowed FOA's entire claim. Id. at *19-*20.

## II. DISCUSSION

FOA has appealed the bankruptcy court's decision on two grounds. First, FOA argues that the bankruptcy court erroneously allowed Gordon Properties to relitigate the issue of assessments against the street-front restaurant unit, including for which expenses and in what amount, contrary to the principles of res judicata. Second, FOA argues that the

8

bankruptcy court applied the wrong methodology for calculating the assessments in any event.

### A. Standard of Review

A district court sitting as an appellate court in a bankruptcy proceeding reviews the lower court's legal conclusions de novo.  See In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005) (citing Three Sisters Partners, LLC v. Harden, 167 F.3d 843, 847 (4th Cir. 1999)). The same standard applies to mixed questions of law and fact. See Canal Corp. v. Finnman, 960 F.2d 396, 399 (4th Cir. 1992). Findings of fact made by the bankruptcy court are reviewed for clear error.  Id.; Fed. R. Bankr. P. 8013.  Therefore, findings of fact will be overturned only if consideration "of the entire record leaves [the reviewing court] with the definite and firm conviction that a mistake has been committed."  Harman v. Levin, 772 F.2d 1150, 1153 (4th Cir. 1985).  In addition, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.

### B. Statutory Framework

The logical starting point for evaluating the instant appeal is the Virginia Condominium Act, which codifies the process for allocating condominium fees among constituent units in a relatively straightforward manner.  See Va. Code Ann. § 55-

79.83A-D.  To this end, the Act distinguishes between the notions of common elements and limited common elements.  Common elements are "all portions of the condominium other than the units."  Id. § 55-79.41.  Limited common elements are a distinct subspecies of common elements, constituting the "portion of the common elements reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units" — that is, the portion of the common elements appertaining to some but not all of the condominium units.  Id.  The statutory scheme establishes a default rule that any expenses "associated with the maintenance, repair, renovation, restoration, or replacement of any limited common element" must be assessed equally against the units to which that limited common element appertains.  Id. § 55-79.83A.  The same is true of any other expenses associated with things "benefiting less than all of the condominium units." Id. § 55-79.83B.  The remaining expenses must be "assessed against the condominium units in proportion to the number of votes in the unit owners' association appertaining to each such unit."  Id. § 55-79.83D.  Such expenses benefit all units and therefore tend to involve the operation and management of the condominium as a whole.

Here, there is no real dispute that the only common element not a limited common element in the Condominium is the ground

10

itself.  Whether or not this fact bears significantly on the
proper assessment of operation and management expenses is a
major point of disagreement.  On one side, Gordon Properties
(and the bankruptcy court) believe it necessary to "review each
line item" of operation and management expenses to "prorate
[them] among all the applicable categories" of limited common
elements and common elements, if possible, thus separating
§§ 55-79.83A and B expenses from whatever minimal § 55-79.83D
expenses remain.  In practice, this requires exceedingly careful
and complex recordkeeping: "The analysis and allocation should
be a two-dimensional spreadsheet with each type of limited
common element, the general common elements and the general
common expenses spread across the columns at the top and the
budget line items listed on the lines going down.  Each line
item expense must be allocated to one or more of the columns.
In some instances, an expense must be disaggregated — that is,
broken down into its component parts — because the component
parts are allocated to different columns."  In re Gordon Props.,
LLC, No. 09-18086-RGM, 2013 WL 5379828 (Bankr. E.D. Va. Sept.
26, 2013).  On the other side, FOA argues that the state court
conclusively decided that all operation and management expenses
"are common expenses that must be assessed pursuant
to . . . § 55-79.83D."  This requires nothing more than

multiplying the sum of such expenses by the percentage of a unit's voting share.

Given the parties' opposing positions, two issues emerge. The first issue is a legal one — whether the bankruptcy court properly construed and gave effect to the decisions of the state court. If it did, the second issue is a factual one — whether the bankruptcy court used the appropriate methodology for prorating the operation and management expenses.

## C. Analysis

FOA argues that the bankruptcy court "erroneously allowed Gordon Properties to relitigate the state court's decision as to the assessment of the street-front [restaurant] unit contrary to settled principles of res judicata and the Rooker-Feldman doctrine." Specifically, FOA argues that the state court expressly held that Gordon Properties was liable for 11.32% of the Condominium's total operation and management expenses, thus rejecting the proposition that Gordon Properties is only liable for 11.32% of the operation and management expenses directly benefiting the street-front restaurant unit. Gordon Properties counters that the bankruptcy court adhered to the commands of the state court, expressed in multiple orders and letter opinions, which articulated a methodology for separating those operation and management expenses associated with common elements (assessable against the street-front restaurant unit)

from those associated only with limited common elements appurtenant to the residential and commercial units. This legal conclusion is reviewed de novo.

It is necessary at the outset to clear up some confusion, evident from the parties' briefs, surrounding the term res judicata. Courts on some occasions use that term to mean a general rubric encompassing both claim preclusion and issue preclusion, and on other occasions to mean only claim preclusion. See Allen v. McCurry, 449 U.S. 90, 94 n.5 (1980). Regarding the latter, such courts make corresponding use of collateral estoppel to mean issue preclusion. Id. This Court will speak in terms of "claim preclusion" and "issue preclusion" to avoid any ambiguity. Claim preclusion is a doctrine that prevents "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Taylor v. Sturgell, 553 U.S. 880, 892 (2008). By contrast, the separate and distinct doctrine of issue preclusion prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." Id. (internal quotation marks and citation omitted). Only issue preclusion is relevant here.

13

Federal courts are directed to look to state law to determine the preclusive effect of prior state-court judgments in interjurisdictional cases like this one. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373 (1985); Artis v. Norfolk & Western Ry., 204 F.3d 141, 147 (4th Cir. 2000). In Virginia, the doctrine of issue preclusion prohibits "the same parties to a prior proceeding from litigating in a later proceeding any issue of fact that actually was litigated and was essential to the final judgment in the first proceeding," and this doctrine applies even where the causes of action or the relief sought in the two proceedings differ. Whitley v. Commonwealth, 538 S.E.2d 296, 299 (Va. 2000) (citations omitted). Issue preclusion also applies where, as here, the relevant issue is one of mixed law and fact. See Loudoun Hosp. Ctr. v. Stroube, 650 S.E.2d 879, 887 (Va. Ct. App. 2007). Four prerequisites must be satisfied before a party can raise issue preclusion: (1) the issue must have been litigated between the same parties, (2) the issue must have been actually litigated in the prior proceeding, (3) the issue must have been necessary to reach the judgment in the prior proceeding, and (4) the prior proceeding must have produced a final judgment against the party who is attempting to relitigate the issue. Whitley, 538 S.E.2d at 299; Glasco v. Ballard, 452 S.E.2d 854, 855 (Va. 1995). When

14

all four prerequisites are satisfied, honoring the first
decision promotes finality and furthers the interests of
judicial economy, both important policy objectives.

The parties focus less on whether the prerequisites have
been met (agreeing that they have) and more on whether the
bankruptcy court afforded the state court's decisions full
preclusive effect (disputing the nature and scope of the state
court's order and letter opinion). Accordingly, it is necessary
to take a close look at the state court's own words. On January
30, 2009, in considering the parties' cross-motions for partial
summary judgment, the state court made findings adverse to
Gordon Properties:

> [T]he Street-Front Commercial Unit owned by Gordon
> Properties, LLC is subject to assessment for the
> common expenses of the Association for the operation
> and management of the Association pursuant to Virginia
> Code § 55-79.83(D); . . . the common expenses are
> described in Article VIII of the Association's Bylaws;
> and . . . the Street-Front Commercial Unit owned by
> Gordon Properties, LLC is liable for 11.32% of such
> expenses[.]

On the basis of these findings, the state court ruled in FOA's
favor on the issue of assessing the street-front restaurant unit
and against Gordon Properties, which claimed that it had already
been assessed too much and sought to enjoin FOA from levying
further assessments:

> [T]he court herby [sic] construes the Declaration and
> Bylaws, together with Virginia Code § 55-79.83(D) as

granting the Association the authority to assess the Street-Front Commercial Unit owned by Gordon Properties, LLC for common expenses relating to the operation and management of the Association as described in Article VIII of the Bylaws of the Association; and [orders] that the street-front commercial unit owned by Gordon Properties, LLC is responsible for 11.32% of those expenses[.]

Article VIII of the Bylaws, in turn, lists a number of "management and common expenses" to be "pa[id] out of [FOA's] Common Expense fund," including the cost of retaining the services of an outside condominium management agent and the cost of providing necessary legal and accounting services. Several of the expenses identified in Article VIII are the sort of common expenses described in § 55-79.83D — i.e., expenses "not specially assessed" to less than all units. The state court's method of allocating them was similarly consistent with § 55-79.83D — i.e., "in proportion to the number of votes in the unit owners' association appertaining to . . . such unit."

The state court's order is therefore quite clear. Contrary to the bankruptcy court's interpretation of it, the order states that the street-front restaurant unit "is subject to assessment for the common expenses" relating to FOA's operation and management, clearly defines such expenses as among those listed in Article VIII, and fixes the unit's proportionate liability at 11.32%, which is the voting share appurtenant to it. In other words, the state court conclusively decided that the street-

16

front restaurant unit could be assessed for additional expenses, went on to identify which additional expenses, and specified the share of those expenses it had to pay. Nowhere in the order did the state court provide for further parsing of those expenses in relation to the subset of units that benefited (assuming such parsing is possible), nor did it make even indirect reference to limited common elements. Instead, the state court decided that the street-front restaurant unit ought to be treated like all other units in bearing the costs of the Condominium's operation and management. That explains why the state court fixed the amount at the unit's voting share and referenced § 55-79.83D explicitly rather than §§ 55-79.83A or B.

The state court's decision makes good sense for a number of reasons. First, it avoids the messy and imprecise task of divining which units benefit and in what proportion from largely administrative expenses relating to non-tangible services; in that respect, the order accords with the purpose of the default catch-all rule in § 55-79.83D. Second, the order reaches a fundamentally fair result, effectively taxing Gordon Properties at a rate commensurate with its representation in the Condominium's governing body owing to the street-front restaurant unit. Gordon Properties has a significant voice in FOA's affairs, and there is no reason it should not share in

17

FOA's overhead costs accordingly.  Although the state court did not prescribe a complex methodology for further apportioning the disputed expenses beyond voting share, a simple solution is not the same thing as an incomplete or partial solution.  The state court surely was aware that certain expenses must be specially assessed against less than all of a condominium's units.  See Va. Code Ann. §§ 55-79.83A-B.  Citing only § 55-79.83D should be treated as a clear and intentional instruction not to assess the operation and management expenses in such a manner.

For similar reasons, the bankruptcy court misconstrued the meaning and scope of the state court's order, to which it addressed only a few paragraphs of its thirteen-page opinion. See In re Gordon Props., 2012 WL 3644788, at *8-*9.  The bankruptcy court mistakenly assumed that the order "did not directly address the allocation of common expenses" relating to FOA's operation and management — i.e., those expenses for which the street-front restaurant unit is proportionately responsible — without explaining why.  See id. at *9.  The bankruptcy court's discussion essentially begs the question by concluding that the state court anticipated further apportionment of the disputed expenses, which is evident in its premise.  See id. ("The parties disagree on whether the circuit court determined the methodology by which assessments must be allocated.").  By

18

contrast, a straightforward reading of the state court's order demonstrates that the court did not expect the parties to apply a complex methodology to apportionment. Instead, the state court clearly granted FOA authority to proportionately assess the disputed expenses in their entirety against the street-front restaurant unit pursuant to § 55-79.83D. By treating FOA's operation and management expenses as still-divisible under §§ 55-79.83A, B, and D, the bankruptcy court minimized the expenses which could be assessed against Gordon Properties, even though Gordon Properties unambiguously lost on the issue before the state court. In so doing, the bankruptcy court failed to give full preclusive effect to the state court's order.

In an attempt to buttress the bankruptcy court's decision, Gordon Properties responds that the 2008 litigation between the parties resulted in several rulings, all of which must be read together. Gordon Properties specifically points to a letter opinion issued on February 23, 2009, following the jury trial, which allegedly narrowed the scope of the existing order by rendering it subject to the same assessment methodology the bankruptcy court used. See In re Gordon Props., 2012 WL 3644788, at *9. The letter opinion provides a detailed analysis of the Condominium's foundational documents, as well applicable statutory requirements, before concluding that FOA must

19

separately account for its expenses relating to common elements and limited common elements. To that end, the letter opinion states:

> In order to comply with the Declaration and By-Laws, [FOA], whether through its financial manager or otherwise, must utilize an accounting system which will accurately record and report all maintenance and operating expenses and reserve expenses and assign each expense, as and when incurred, to whichever of the six categories of Common Elements, as described in Sections III and IV of the Declaration, for which those expenses were incurred.

Sections III and IV, in turn, list five categories of limited common elements and a final category for "general" common elements.[4]

The bankruptcy court imported this methodology to further apportion the "common expenses relating to the operation and management [of FOA]" so as not to "expand[] common expenses that may be assessed against the street-front units." In re Gordon Props., 2012 WL 3644788, at *12. There is some intuitive appeal to such an approach given that the state court's order paints with a broad brush regarding Article VIII expenses, some of which clearly involve limited common elements that would be assessable only against the units to which the limited common

---

[4] The five categories of limited common elements are described as the "parking garage and parking structure," the "storage area," "residential limited common elements," "commercial limited common elements," and "residential/commercial limited common elements."

elements appertain — e.g., the residential and commercial units. FOA avoided inappropriately assessing Gordon Properties, however, by basing its calculation on only those expenses identified in subsections (b), (c), (d), and (i) of Article VIII, that is, FOA only assessed Gordon Properties for its proportionate share of the Condominium's liability insurance, the services of its management agent, legal and accounting services, and real estate taxes, although the state court's order does not explicitly exclude subsections (a), (e), (f), (g), (h), and (j).

FOA's selective calculation of assessable expenses merely acknowledges the obvious: that not every Article VIII expense is an expense that "relat[es] to the operation and management [of FOA]."[5]  Nor is Gordon Properties correct that the subsequent letter opinion states otherwise.  First, the letter opinion does not purport to address or modify the existing order, acknowledging in a footnote on the opening page that the issue of assessments against the street-front restaurant unit for

---

[5] For instance, subsections (a), (e), and (f) refer to the costs of painting, maintaining and replacing the "Common Elements," and providing utilities for the "Common Elements," all of which are specific costs easily distinguishable from general operation costs.

operation and management expenses had already been decided.[6]
Indeed, the letter opinion addressed an entirely different
issue: assessments for reserves for the maintenance and repair
of limited common elements (e.g., parts of the physical
structure) rather than the common expenses incurred in operating
and managing the Condominium.  It makes sense given the subject
matter of the litigation that the state court would prescribe a
methodology to ensure proper apportionment among the units that
benefit.  Second, the letter opinion speaks of different
expenses in the crucial passage, crafting a methodology for "all
maintenance and operating expenses and reserve expenses" rather
than "operation and management expenses."  The state court knows
the difference between maintenance and management expenses, and
ought to be taken at its word.  Third, contrary to the
bankruptcy court's interpretation, the state court did specify
which among many Article VIII expenses were assessable against
the street-front restaurant unit: common expenses "relating to
the operation and management" of FOA.  These expenses are a
discernible subset of Article VIII expenses, encompassing less
than all expenses described therein.  Finally, the state court's
reliance on § 55-79.83D should remove any doubt that it did not

---

[6] The letter opinion does resolve the separate issue of
"collecting <u>maintenance</u> assessments from Gordon Properties as
owner of a street-front commercial unit."

envision FOA further apportioning the disputed expenses in a
manner consistent with §§ 55-79.8A and B.  In sum, the state
court made Gordon Properties liable for a proportionate share of
FOA's unparsed operation and management expenses as owner of the
street-front restaurant unit.

    This interpretation of the state court's order is
consistent with additional contextual clues in the record.  In
another part of its order, the state court referred to "the
under-assessment" of the street-front restaurant unit,
suggesting that it intended its order to allow FOA to levy an
increased assessment against Gordon Properties.  The state court
also dismissed with prejudice Gordon Properties' claim "for
monetary damages for over-assessment" of the street-front
restaurant unit, therefore rejecting what is the practical
consequence of the bankruptcy court's decision — namely, that
Gordon Properties may enjoy the voting benefits that appertain
to the street-front restaurant unit while bearing almost none of
the costs associated with operating the Condominium.  Even more
telling is the parties' shared understanding of the broad scope
of the order at the time it was issued.  In the following
months, FOA issued the corrective assessment on which it based
its proof of claim in the bankruptcy proceeding.  Gordon
Properties, for its part, quickly appealed the state court

order, which it viewed as a disaster.  In its petition, Gordon Properties complained that "requiring Street-Front Commercial Unit owners to pay into the Common Expense fund for the items listed in Article VIII of the bylaws would lead to inconsistent and absurd results"; that such payment "would be nothing more than a bald subsidy to Residential and Commercial Unit owners"; and that the state court "effectively ruled that the condominium instruments do not specify any basis on which to apportion the majority of [FOA's] expenses."  These arguments fell on deaf ears at the Supreme Court of Virginia, which denied the petition.

In the final analysis, the state court's order and letter opinion left no room to apply a methodology for the purpose of additional parsing of the operation and management expenses at issue.  Because all four prerequisites of issue preclusion are satisfied, see Whitley, 538 S.E.2d at 299, the bankruptcy court was required to give full effect to the state court's order holding the owner of the street-front restaurant unit liable for 11.32% of FOA's common operation and management expenses, which it failed to do.  Accordingly, there is no need to address appellant's secondary argument or any of the disputed questions of fact.

### III.  CONCLUSION

For these reasons, the bankruptcy court's decision will be reversed and this matter will be remanded with instructions to allow FOA's proof of claim for $315,673.36, which amounts to 11.32% of the operation and management expenses agreed upon by the parties' experts, by an appropriate Order to be issued with this Memorandum Opinion.

Entered this _22nd_ day of August, 2014.

Alexandria, Virginia

                                            /s/
                                    _____
                                    Leonie M. Brinkema
                                    United States District Judge